## HOLLAND et al. v. DE WALT.  (No. 7933.)

(Court of Civil Appeals of Texas. Galveston. Oct. 21, 1920. Rehearing Denied Nov. 10, 1920.)

1. **Cancellation of instruments** ⊂⊃37(8)— Plaintiff not required to allege he had made deferred payments called for in deed to him.

Where plaintiff seeking cancellation of his deed alleged that his predecessors had conveyed the property for valuable consideration to him and his associates, and that plaintiff became the owner of $1/120$, it was not necessary for him to allege that he and his associates had made the deferred payments called for in his deed.

2. **Cancellation of instruments** ⊂⊃37(6)—Petition held to state cause of action for cancellation of deed.

Petition, by owner of $1/120$ interest in the oil, gas, and other minerals on and under certain lands, to cancel his deed thereof to defendants, held to state a cause of action in its allegations of misrepresentations by defendants relative to payment by one of the amounts due from plaintiff under the terms of the original conveyance to himself.

3. **Cancellation of instruments** ⊂⊃47—Suit not defeated by claim plaintiff had parted with interest acquired by him in property conveyed to defendants.

Where the deed from plaintiff's predecessors conveyed to him title to the property involved in his suit against defendants to cancel his own deed to them as procured by misrepresentations, in the absence of evidence requiring finding by the trial court that plaintiff had ever parted with his interest so acquired other than by his deed to defendants sought to be canceled, plaintiff's suit could not be defeated on the claim there was no evidence showing he had any interest in the property.

4. **Cancellation of instruments** ⊂⊃59—Defendants entitled to judgment for amount paid for fraudulent conveyance and amount spent in removing incumbrance.

Defendants who procured by fraud and misrepresentations conveyance from plaintiff of his interest in mineral lands held entitled to judgment against him in his suit for cancellation for the $1 paid to him by them on execution of deed to them, and for the $25 paid by them to plaintiff's predecessor to continue in effect the conveyance from such predecessor to plaintiff and his associates.

5. **Estoppel** ⊂⊃110—No issues of waiver or estoppel where not pleaded.

In the absence of plea of either waiver or estoppel, no such issues were in the case.

6. **Mines and minerals** ⊂⊃55(8)—Grantor of mineral land held not to have waived right to cancellation of deed for fraud by permitting grantees to make payment.

Plaintiff who conveyed to defendants under misrepresentations his interest in certain mineral lands held not to have waived his right to rescind his conveyance by standing by and permitting defendant grantees to make an annual rental payment to keep alive plaintiff's and their rights; plaintiff having brought suit immediately after learning of the fraud practiced on him.

7. **Mines and minerals** ⊂⊃55(8)—In a suit to cancel conveyance, testimony that plaintiff repeated misrepresentations to wife admissible.

In suit to cancel conveyance of plaintiff's interest in certain mineral lands as procured by defendants' misrepresentations, in view of the circumstances, testimony of plaintiff that he repeated to his wife representations made him by a defendant as an inducement for the conveyance requested held admissible.

8. **Appeal and error** ⊂⊃1054(1)—Testimony of plaintiff irrelevant but harmless, trial being to court.

In suit to cancel deed to plaintiff's interest in mineral lands, statement of plaintiff that he discussed the matter with his parents telling of their expressions, held irrelevant and immaterial, but harmless; the case having been tried before the court without a jury.

9. **Mines and minerals** ⊂⊃55(1)—Seller of mineral rights receiving payment in full could not assign to party paying interest of one of the associated buyers.

Where the seller of mineral rights in land to a group of associates duly received all payments due him, which payments inured to the benefit of plaintiff, one of the associates, to the extent of his interest, the seller could not assign plaintiff's interest to the parties making such payments on his behalf.

10. **Mines and minerals** ⊂⊃55(1)—Receipt procured from seller of mineral land by fraud as to buyer could not inure to benefit of parties.

Where the minerals in certain land were sold to a group of associates, of whom plaintiff

was one and a defendant another, and such defendant and a third person by misrepresentations procured deed of his interest from plaintiff, and subsequently made to the original seller the payments due to keep plaintiff's rights alive, the seller's receipt obtained through such fraudulent transaction could not inure to nor confer benefits on defendant and the third person, though it· purported to assign the seller's rights to them

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by D. C. De Walt against Walter J. Holland and another. From judgment for plaintiff, defendants appeal. Reformed to render judgment for defendants for a specified sum; otherwise affirmed.

Hutcheson, Bryan & Dyess, of Houston, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, for appellee.

LANE, J.· This suit was brought by appellee, D. C. De Walt, against appellants, W. J. Holland and Jim R. Jacobs, in the district court of Harris county on the 25th day of February, 1919, to cancel a deed executed by himself and wife to appellants on the 25th day of July, 1918, whereby they conveyed to appellants all their interest in all the oil, gas, and other minerals on and under certain lands in their petition described.

Plaintiff substantially alleged:

That on the 8th day of February, 1915, one Charles Brown and wife, Ora Brown, by their deed of that date, did convey, assign, and transfer to him and A. L. Holland and S. A. McMillan an undivided 1/20 of all the oil, gas, and other minerals on or under any or all of the lands then owned by the said Brown and wife in Brazoria county, Tex., said lands being particularly described in the petition, and that as part consideration for the purchase of said interest in said lands he and his associates, A. L. Holland and· S. A. McMillan, contracted and agreed to pay to Brown the sum of $75 on the 1st day of February of each year thereafter as long as oil, gas, or other minerals were produced in paying quantities, and that, should they fail to pay said sum annually when due, such failure should work a forfeiture  of the rights and interests so conveyed.

That in procuring the said mineral deed he was acting for himself and for one C. S. Powers of Harris county, Tex., and that he held in trust for the use and benefit of the said C. S. Powers an undivided one-half interest in the rights and properties conveyed and transferred by said mineral deed to him.

That by said conveyance he, in his own right, became the owner of and was vested with the title in fee on condition subsequent to an undivided 1/120 of the oil, gas, and other minerals on, in, and under the lands described.

He further alleged that on the 25th day of July, 1918, appellee and his wife, Ruth De Walt, made, executed, and delivered to appellants their deed, which purports to convey to appellants all their right, title, and interest of whatsoever nature, kind, or description in and to the property conveyed to appellee by the deed of Charles Brown and wife, of date February, 1915 (the deed being set out in full in the petition). He then alleged as follows:

"That the execution and delivery of the said instrument of writing by the plaintiff herein and his said wife was induced and procured by the fraud of the defendants in this:

"(a) That as an inducement to· the execution and delivery of said instrument of writing, the defendants affirmatively stated and represented to the plaintiff, prior to the execution and delivery of said instrument, that certain moneys which were necessary, or which were then believed by all of the parties to this suit to be necessary, to maintain the rights of the grantees in the above-mentioned mineral deed from Charles Brown to the plaintiff herein and A. L. Holland and S. A. McMillan, dated the 8th day of February, 1913, to wit, the sum of $75 per annum, had been paid from time to time by the defendant Walter J. Holland to the extent of one-third thereof, or the sum of $25, out of his own individual funds for account and to the use and benefit of the plaintiff herein, and the defendants, as a further inducement for the execution and delivery of said instrument of writing, urged upon the plaintiff that thereby there arose a moral obligation on the part of the plaintiff herein, by reason of such alleged payments by the defendant Holland, to make, execute, and deliver to him, and to his nominee, the defendant Jacobs, the ·instrument of writing aforesaid, of date July 23, 1918. However, the plaintiff avers that in truth and in fact none of said payments had been made by the defendant Holland out of his own individual funds for account of this plaintiff, and that the aforesaid statement and representation of defendant that he had so made such payments was false and untrue when made, and at that time was known to the defendants and each of them to be false and untrue.

"That each and all of the said statements and misrepresentations of fact were material. That same were relied upon by this plaintiff, and he was thereby induced to execute said instrument, whereas this plaintiff would not have executed the said instrument of writing and would not have permitted his said wife to execute the same had said statements and misrepresentations not been made to him or had the plaintiff then known the true facts with respect to such representations, which facts the plaintiff did not learn until after January 1, 1919. That each and all of said representations were made to the plaintiff herein, and the fraud thereby committed was perpetrated in the city of Houston, Harris county, Tex., to the great damage of plaintiff in the sum of not less than $10,000.

"Plaintiff would further show that the rights

and properties described in and purporting to be assigned and transferred by the said instrument of writing were on the date thereof, and are now, of great value, and were then, and are now, reasonably worth not less than the sum of $10,000, and that the value of the same was known to the defendants and each of them, but was unknown to the plaintiff at the time when said representations and each of the same were made to this plaintiff. That the real and true consideration for the execution and delivery of the said instrument of writing, aside from the misrepresentations hereinabove alleged, was the sum of $1, which the plaintiff here now tenders back to the defendants, and thereby the plaintiff avers that the said instrument of writing is and has always been void and of no force or effect because not supported by any lawful consideration.

"That the said properties and rights described in and purporting to be assigned and transferred by virtue of the said instrument of writing were and are the community property of the plaintiff herein and of his said wife, and did not constitute any part of their homestead, and that the joiner of the plaintiff's wife in said instrument of writing was unnecessary, and that therefore it is not necessary for his said wife to join as a plaintiff to this suit.

"That by reason of the fraud and want of consideration herein above alleged, the plaintiff is entitled, as against the defendants, and each of them, to have the said instrument of writing of date July 25, 1918, canceled, rescinded, and annulled, and wholly set aside and avoided.

"Wherefore, the premises considered, plaintiff prays * * * that upon hearing he have judgment against the defendants and each of them, canceling, annulling, setting aside, and avoiding the said instrument of writing of date July 25, 1918, and for a rescission of the same, and for costs of court, and for such other and further relief, special and general, at law and in equity, as the plaintiff may show himself entitled to receive."

Appellants Holland and Jacobs answered by general demurrer, by several special exceptions to the petition, and by a plea of not guilty.

The cause was tried by the court without a jury. Upon hearing the court overruled appellants' demurrers, both general and special, and upon the evidence rendered judgment in favor of appellee canceling the deed executed and delivered by appellee and wife to W. J. Holland and Jim R. Jacobs of date July 25, 1918. From this judgment W. J. Holland and Jim R. Jacobs have appealed.

By the first assignment it is insisted that the court erred in overruling the defendants' general demurrer to the plaintiff's petition for the reason that it is not alleged in the petition that plaintiff had met the "condition subsequent" and had paid the $75 per annum as provided for in the deed from the Browns to him and his associates, and therefore he failed to allege that he had an interest in the subject-matter of the suit.

[1, 2] It is alleged in the petition that Charles Brown and wife for a valuable consideration had conveyed to the plaintiff and his associates, A. L. Holland and S. A. McMillan, the property involved in this suit, and that plaintiff became the owner of $1/120$ thereof. It was not necessary for him, in order to maintain a suit for said property, to allege that he and his associates had paid the deferred payments called for in the deed. We think it apparent that the only purpose of the pleader in alleging or setting out in the petition that part of the deed from the Browns with reference to the $75 annual payments was to make clear and explain those parts of the necessary allegations of the petition to follow which set out the representations made by W. J. Holland to appellee regarding the payment of that part of said annual payments due by appellee. Had this part of the petition been omitted, that part which alleged misrepresentation on the part of W. J. Holland would have been unintelligible. The petition sets up a cause of action, and therefore the court properly overruled the general demurrer.

By the second assignment it is insisted that—

"The pleadings and evidence in the trial of this case wholly fail to show that the plaintiff had any interest in the subject-matter covered by the deed sought to be canceled, either at the time of the making of said deed, or at the time of bringing suit, or at the time of the trial, or any other intermediate time, but on the contrary established that the said plaintiff had no interest therein at any of said times, and had long before wholly abandoned his contractural rights with the said Brown and had never made any payments to the said Brown, and, therefore, was not entitled to recover judgment against the defendants even had they made misrepresentations to plaintiff."

The contentions made by appellants in support of the second assignment are: First, that there were no pleadings authorizing a recovery by appellee; and, second, that there was no evidence showing that appellee had any interest in the property involved in this suit, but, on the contrary, the evidence showed that the appellee had abandoned the interest therein acquired by virtue of the deed from Charles Brown and wife, and that at the time of filing this suit, and at all times since, he had no interest in said property, and therefore the court erred in rendering judgment for appellee.

[3] We have made answer to and disposed of the first contention by what we have said in disposing of the first assignment, and a further discussion thereof is unnecessary. As to the second contention, it is sufficient to say that the deed from the Browns conveyed to appellee the title to the property in question, and there was no evidence authorizing, or at least demanding, a finding by the trial court that appellee had ever parted with his interest so acquired, unless

he should find that appellee did so by the deed executed by him and his wife to appellants, and it is evident from the judgment rendered that the court refused to so find. The second assignment is overruled.

By the third and fourth assignments the contention is made, first, that the court erred in rendering judgment for appellee, because the undisputed evidence shows that after appellants had procured the deed to the property involved from appellee, they paid $25 to Charles Brown to take care of the installment due on the property in question by appellee to Brown, on the 1st day of February, 1919, and that appellee had never offered at any time to repay such sum to them as a prerequisite to the cancellation of the deed from himself and wife to them.

It is by no means clear that where one procures title and possession of property by means of fraud practiced upon the owner and thereafter expends money in the discharge of an incumbrance against such property, which if not removed and left unpaid would result in the final loss of the property to the owner, he can, in a suit for a rescission of the contract so procured by fraud, recover the money so expended. Chambers v. Wyatt, 151 S. W. 864.

[4] As stated in appellee's brief:

"It is well settled that where a volunteer, without compulsion, pays a debt, no right arises to equitable subrogation, and the law implies no promise on the part of any one to refund him his money. Certainly one who has been guilty of active fraud cannot occupy any stronger position with respect to the party whose confidence he has abused than could a mere volunteer."

But, however, as the payment of the $25 to Brown by appellants was paid to remove an incumbrance against the property here involved, which appellee would have been required to pay to preserve his title, and as appellee received benefits therefrom, we shall resolve the doubt in favor of the assignments and hold that the court erred in not requiring judgment requiring appellee to repay to appellants the $1 paid to him by them at the time of the execution of the deed to them by himself and wife, and the $25 paid by appellants to Charles Brown on the 20th day of January, 1919, so as to continue in effect the conveyance from the Browns to appellee and his associates. But we do not think such error upon the part of the trial court calls for a reversal of the judgment rendered, as such rights of appellants can and will be preserved by a reformation of the decree so as to provide for recovery of said sum of $25 by appellants over against appellee.

It is insisted by the fifth assignment that—

"The trial court erred in rendering judgment in favor of the plaintiff because the plaintiff is shown by the evidence to have waived whatever right he may have had, if any, to rescind the assignment he executed to Holland and Jacobs by standing idly by and permitting the said Holland and Jacobs to make the annual rental payment which fell due February 1, 1919, and to make and record a renewal and extension of the lease from Brown in their names, and is now therefore not in a position to set up fraud in the procurement of the assignment."

[5, 6] Sufficient answers to this assignment are: First, there was no plea of either waiver or estoppel by appellants, and therefore there were no such issues in the case; second, there was no evidence showing that appellee discovered the fraud alleged to have been perpetrated upon him by appellants before the payment of the $25 by appellants, but to the contrary appellee testified that he did not learn that the representations made to him by W. J. Holland, which induced him to execute the deed sought to be canceled, were fraudulent until a very short time before he filed this suit. If his testimony is to be accepted as true, which the trial court had the right to do, he acted promptly in bringing his suit after learning of such fraud. There was no testimony except that of appellee tending to show when such fraud was discovered by appellee, nor was there any evidence tending to show that appellee had any reason to believe appellants would make payment of the $25 to Brown on the 20th day of January, 1919, which was not due until the 1st day of February, 1910.

This suit was filed on the 25th day of February, 1919. There is therefore no evidence to support the contention that appellee stood idly by and permitted appellants to pay said $25. The assignment is overruled.

The seventh and eighth assignments are overruled. There is no finding of facts nor conclusions of law by the trial judge in the record, nor is there anything in the record, to verify the contention made by these assignments that the court based his judgment upon a finding that the silence of W. J. Holland, with regard to certain facts known to him and unknown to appellee, was equivalent to positive misrepresentations.

[7, 8] After appellee De Walt had testified that W. J. Holland had told him that he had kept up the appellee's payments (due Brown), he was permitted to testify that he repeated to his wife what Holland had told him, and that he had discussed the matter of conveying the land to appellants with his father and mother, who thought it was very foolish for him to do so. Appellants objected to the admission of this testimony and make such admission the grounds of their ninth assignment, insisting that "it was hearsay, self-serving, immaterial, and irrelevant." Prior to the admission of this testimony, it had been shown that

appellants had met appellee in Houston and had given him the deed which he later executed, and requested him to execute the same and to also get his wife to execute it. Under these circumstances, we think it proper that he should have been permitted to show that he repeated to his wife the representations made by Holland as an inducement for the conveyance requested. As to the statement that he discussed the matter with his parents and told of their expressions, we agree with appellant that the same was wholly irrevelant and immaterial, and should not have been admitted; but we could hardly be expected to reverse the judgment because of its wrongful admission. The case was tried before the judge without a jury, and we could hardly imagine that he let this objectionable testimony have any weight with him in forming his conclusions culminating in the judgment rendered. Frenkel ·v. Caddou, 40 S. W. 638; Mullaly v. Noyes, 26 S. W. 145.

[9] The evidence shows that one W. H. Blick, at the suggestion of A. L. Holland and S. A. McMillan, associates of appellee in the purchase of the property·from Brown, that he take the place of appellee and pay that portion of the deferred payments on the property involved due by appellee to Brown, did so make such payment for two or three years, believing that such payments would have effect to vest in him such interest as appellee held in the property. By the tenth assignment appellants insist that as Blick made these payments and as they (appellants) made the payments due in February, 1919, after they had the deed from appellee and wife, and as all the receipts given by Charles Brown were made in the names of the parties paying same and not in the name of appellee, all of said receipts constituted assignments by Brown of the interest originally conveyed by him to appellee, to the parties making such payments.

The rights of appellee under the deed from Charles Brown were not divested by the payments made by Blick and others, nor by the receipts given in acknowledgment of the same. Brown, and he alone, could divest appellee of his title for nonpayment of the deferred payments due him. Brown could not have divested appellee of such rights, because all annual payments due him were promptly made to him, and it made no difference to him whether same were paid by appellee or another person. Such payments necessarily inured to the benefit of appellee by preventing Brown from declaring a breach of the conditions, and the receipts for such payments did not constitute an assignment of appellee's interest in the property involved, nor were they intended by Brown as such assignment. Brown, having been paid all annual payments due him, which payments inured to the benefit of ap-

pellee, had no interest to assign to the parties making such payments.

The remarks in appellee's brief being approved by us, we have adopted the same as our own, as follows:

"It must be borne steadily in mind that the original deed from Brown vested in De Walt and his associates a title in fee upon condition subsequent; that this title could not be divested by any one except Brown or his heirs, and by them only, when the condition was breached. Therefore, so long as no breach occurred the estate of the appellee remained in full force and could not have been adversely affected without his consent, and in view of the statute· of frauds could obviously not be conveyed except by a writing signed by him or his authorized agent.

"Cyc. says: 'Payment of a debt by a stranger, although without the debtor's request, if accepted as such by the creditor, discharges the debt so far as the creditor is concerned.' 30 Cyc. 1221.

"Consequently when Blick or the appellants paid Brown whatever was due him and when Brown executed receipts showing that the money was received by him for the purpose of keeping alive the interest originally·conveyed to appellee and his associates, it necessarily resulted that Brown could not thereafter declare a breach of the condition reserved in his conveyance. The thought of Blick or the appellants that by making the payments they were acquiring an interest adverse to appellee was at most a mistake of law which did not change the legal effect of the payments."

[10] If, however, we are in error in holding that the receipt given by Charles Brown to A. L. Holland, S. A. McMillan, W. J. Holland, and Jim R. Jacobs, of date January 29, 1919, acknowledging payment of $75 in payment .of the annual installment due by appellee and his associates as provided in the deed from Brown to appellee and his associates, did not upon its face constitute a legal conveyance of appellee's interest to the property involved to appellants, still we hold that under the facts proven in this case such receipt did not have the effect to convey such interest to appellants, as it was shown by the evidence, as found by the trial court, that before such payment was made for which said receipt was given appellants had procured a deed from appellee by fraud, which fraud was not discovered by appellee until after such payment was made and receipt executed, and said receipt having been obtained through this fraudulent transaction could not inure to, nor confer benefits upon, appellants.

By the eleventh and last assignment it is insisted that the court erred in refusing a new trial to appellants upon their showing of newly discovered evidence. This contention is based upon the allegation in the motion that since the trial appellants had for the first time learned of the facts set forth in the affidavit of R. H. Kelley attached to

said motion. There is no merit in this contention. An examination of the affidavit of R. H. Kelley attached to the motion will disclose that it would not form any basis for a belief on the part of appellants or their counsel that his evidence would be of any value in their cause upon another trial. The affidavit does not show, as stated in the assignment, that Kelley went to Brazoria county at the instance of appellee for the purpose of paying the annual installment due Brown by appellee which fell due February 1, 1919, but, to the contrary, shows that he went at the request of C. S. Powers, and that he did not represent appellee until the 24th day of February, 1919, some 24 or more days after he was sent to Brazoria county by C. S. Powers. The trial court did not err in refusing to grant the new trial.

For the reasons pointed out, the judgment of the trial court is reformed so as to here render judgment for appellants for the sum of $26, the items comprising which are shown hereinbefore, against appellee; the judgment otherwise remaining undisturbed and being affirmed.

Reformed and affirmed.